**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **ZURI CROSON MURPHY, and JERIC MURPHY** | |
| **Plaintiffs,** | |
| **v.** | **1:09-cv-1568-WSD** |
| **HOSANNA YOUTH FACILITIES, INC.,** | |
| **Defendant.** | |

## OPINION & ORDER

This matter is before the Court on Defendant Hosanna Youth Facilities, Inc.'s ("Hosanna") Motion for Summary Judgment and Plaintiffs Zuri Croson Murphy ("Zuri") and Jeric Murphy's ("Jeric") (collectively "Plaintiffs") Motion to Compel Arbitration.

## I.     BACKGROUND

Hosanna is a North Carolina corporation that employs licensed and non-licensed professionals to provide mental health services.  (Declaration of Randolph Croson ("Croson Decl.") ¶ 4).  Hosanna's Chief Executive Officer ("CEO") is Sandra Taylor ("Taylor").  Its Chief Financial Officer is Randolph Croson ("Croson").  (Id at ¶ 3).

In March 2008, Hosanna opened an office in DeKalb County, Georgia. (Declaration of Sandra Taylor ("Taylor Decl.") ¶ 4). Taylor hired Zuri, Croson's daughter, to head the office. (Croson Decl. ¶ 6). Zuri then obtained permission from Croson to hire her husband, Jeric, as the office's Consumer Relations Manager. (Id. at ¶ 7).

At the beginning of their employment, Plaintiffs requested that Hosanna provide them with employment contracts. (Id. at ¶ 8). From this point, the parties' account of what happened diverges.

Plaintiffs allege that in early-March 2008, they met with Taylor and Croson at a hotel to discuss the terms of their employment agreements. (Third Affidavit of Zuri Croson Murphy ("3rd Zuri Aff."), ¶ 7; Second Affidavit of Jeric Murphy ("2nd Jeric Aff.") ¶ 7). Plaintiffs allege that Taylor agreed at this meeting to the terms of individual employment contracts to be entered into with Zuri and Jeric. (3rd Zuri Aff., ¶ 8; 2nd Jeric Aff., ¶ 7). Plaintiffs contend that Croson emailed Zuri an employment contract (the "March 12 Employment Contract") reflecting the parties' agreement or the terms of their employment relationship. (3rd Zuri Aff., ¶ 8, Ex. 1).

Plaintiffs allege that they accepted the March 12 Employment Contract without modification.[1] (3rd Zuri Aff., ¶ 10). Zuri states that as requested by Croson, she created a nearly identical agreement for Jeric. (3rd Zuri Aff., ¶ 9). Plaintiffs claim they confirmed the terms of both agreements with Croson via telephone. (3rd Zuri Aff., ¶ 10; 2nd Jeric Aff. ¶ 9). Plaintiffs contend they signed the employment contracts (the "Employment Contracts"), had them notarized, and, on March 31, 2008, delivered them by email to Taylor and Croson. (3rd Zuri Aff., ¶ 10; 2nd Jeric Aff., ¶ 9).

Hosanna denies that a March 2008 meeting at a hotel to negotiate employment contracts took place. (Taylor Decl., ¶ 7). It alleges that Croson provided Zuri with a draft employment contract that he found on the internet. (Croson Decl., ¶ 8). Hosanna alleges that this contract was not intended to constitute an offer because Croson was not authorized to negotiate or enter into contracts on behalf of Hosanna. (Taylor Decl., ¶ 4; Croson Decl., ¶ 3). Taylor, Hosanna claims, was the only person authorized to enter into employment agreements on behalf of Hosanna, and Taylor was unaware of Plaintiffs' request for employment contracts. (Taylor Decl., ¶ 7).

---

[1] Zuri states that she may have changed the start date of the contract to accurately reflect the beginning of her employment. (3rd Zuri Aff., ¶ 10).

Plaintiffs contend Croson was authorized to negotiate and enter into contracts on behalf of Hosanna (3rd Zuri Aff., ¶ 5; 2nd Jeric Aff., ¶ 5) and Croson routinely performed this function for Hosanna. (Affidavit of Elizabeth Pope ("Pope Aff."), ¶ 3). Plaintiffs submit the declaration of Elizabeth Pope, a former Hosanna employee, who states she frequently saw Croson engage in contract negotiations on behalf of Hosanna. (Id.). Pope states she personally negotiated her pay with Croson. (Id.).

In supporting its position that an employment agreement was not reached in March 2008, Hosanna claims that after March 2008, Zuri made various modifications to the agreement Plaintiffs allege was reached in March. (Croson Decl., ¶ 9). To support its claim that the negotiations were not concluded, Hosanna first proffers two versions of an employment agreement (one dated March 8, 2008, and the March 12 Employment Contract) which supposedly evidence modifications Plaintiffs requested.[2] (Id. at Ex. 1). Hosanna also offers an email from Zuri, dated July 3, 2008, which states:

> Dad,
> Here are our signed and notarized contracts. (Code is 1st six digits of your usual code.) Please call us so we can discuss the changes and have Ms. Taylor sign them so we can have it resolved. We are going on to the third month and I am really stressed out about this.

---

[2] Hosanna fails to identify the source of either of these documents.

(Croson Decl., Ex. 2).[3]

Hosanna claims that it rejected all of Zuri's modification proposals and refused to sign any version of the contract. (Taylor Decl. ¶¶ 9-11, Croson Decl. ¶¶ 11, 17). Hosanna also alleges that it did not negotiate the terms of an employment contract for Jeric. (Croson Decl., ¶ 11). Hosanna asserts that its refusal to agree to the Employment Contracts is evidenced by the fact that Plaintiffs never received a pay raise mandated in Section 3 of the Employment Contracts. (Declaration II of Sandra Taylor ("2nd Taylor Decl."), ¶ 7; Croson Decl.,¶ 14). Hosanna also asserts that the Employment Contracts were not enforceable because the parties did not execute the Non-competition Agreement referenced in Section 7 of the Employment Contracts. (2nd Taylor Decl., ¶¶ 5-6).

Plaintiffs have a different version of events. They contend that Hosanna's actions do evidence that Hosanna agreed on the terms of the Employment Contracts. In April 2008, shortly after the March initial contract negotiations, Plaintiffs allege they had a meeting with Croson and Taylor. (3rd Zuri Aff., ¶ 12; 2nd Jeric Aff., ¶ 10). Prior to that meeting, Croson stated, in response to the March 31, 2008 email from Plaintiffs which attached the Employment Contracts, "[c]annot open them. Will sign when we get there." (3rd Zuri Aff., Ex. 3).

---

[3] Hosanna did not submit any documents that may have been attached to this email.

Plaintiffs contend this email supports that an agreement had been reached with Taylor and Croson and that Defendant intended to sign the versions negotiated. Plaintiffs contend that Taylor reviewed the signed contracts at the meeting, told Plaintiffs that "everything looked good," and stated that she would immediately sign the Employment Contracts presented. (3rd Zuri Aff., ¶12; 2nd Jeric Aff., ¶ 10).

Zuri denies that her July 3rd email to Croson evidences that the parties were still negotiating the terms of the Employment Contracts. (4th Affidavit of Zuri Croson Murphy ("4th Zuri Aff."), ¶¶ 3-6). Her reference to "changes" in the July 3rd email related, she claims, to the parties' agreement that Plaintiffs would defer their 90 day pay raise. (4th Zuri Aff., ¶ 3).[4] She further states she may have been referencing a discussion to change the Effective Date on Jeric's Employment Contract. (Id.).

On March 31, 2009, Plaintiffs again sent the Employment Contracts by email to Croson (the "March 2009 email") and requested Hosanna's signature.

---

[4] Plaintiffs contend that they agreed to defer the raise promised in Section 3 of the Employment Contracts because Croson told them the company was in poor financial condition and they thought deferring the agreed upon raise was the proper response. (3rd Zuri Aff., ¶ 13; 2nd Jeric Aff., ¶ 11). They allege that Croson promised to implement the raise when Hosanna was in better fiscal shape. (Id.). They contend that Croson stated that Hosanna would provide Plaintiffs all pay resulting from their deferral. (Id.).

(Croson Decl. ¶ 15; 3rd Zuri Aff., Ex. 4).[5]   (3rd Zuri Aff., ¶ 14; 2nd Jeric Aff.,

¶ 12).   Plaintiffs allege that Hosanna's internal correspondence about the March

2009 email evidence Taylor approved the agreements.  Taylor wrote to Croson, "I

really need to speak to you about these.  I have a change of heart about something

[sic], and I would like to speak to you about this.  Give me a call before you

present this."  (Croson  Decl., Ex. 3).

A month later, in April 2009, Taylor demoted Plaintiffs for unsatisfactory

performance.  (Taylor Decl., ¶12).  Plaintiffs resigned shortly after their demotion.

(Id.).  Following their resignation, Plaintiffs brought this claim for breach of

contract and moved to compel arbitration.  Hosanna now moves for summary

judgment on Plaintiffs' claims.

## II.     HOSANNA'S MOTION FOR SUMMARY JUDGMENT

### A.     Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The party

---

[5] Plaintiffs allege they sent the March 2009 email at the request of their financial
planner who wanted signed copies of all Plaintiffs' important contracts, evidencing
Plaintiffs' belief contracts had been finalized.

seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B.      Basis For Hosanna's Motion For Summary Judgment**

Hosanna moves for summary judgment alleging that the parties did not agree

to the Employment Contracts.  "A valid contract requires parties able to contract, a

consideration moving to the contract, the assent of the parties to the terms of the

contract, and a subject matter upon which the contract can operate. If the parties

have not agreed to an essential term, no meeting of the minds of the parties exists,

and a valid and binding contract has not been formed." King v. Comfort Living,

Inc., 287 Ga. App. 337, 339 (2007) (internal quotations omitted).  Hosanna argues

that Croson did not have the authority to negotiate and enter into contracts on

behalf of Hosanna.  It also alleges that Plaintiffs did not provide any consideration

for the Employment Contracts and that the parties did not agree on the essential

terms of an agreement.  The Court addresses each issue below.

**C.      A Triable Issue Of Fact Exists Regarding Whether Croson Had
The Authority To Bind Hosanna To A Contract**

Hosanna contends that Croson did not have the authority to enter into the

Employment Contracts.  Plaintiffs argue there is a dispute of fact regarding

Croson's authority.

The principal-agent relationship arises wherever one person, expressly or by

implication, authorizes another to act for him.  O.C.G.A. § 10-6-1.  "Officers

appointed by the directors are clothed with only such powers and authority as are

9

expressly conferred upon them by the charter or the by-laws, or as may be implied." Bresnahan v. Lighthouse Mission, Inc., 230 Ga. App. 389, 390 (1998) (quotation and citation omitted). "Agency by implication rests merely upon rational inference and the authority to be implied from acquiescence in acts usual and ordinary in the course of business with not include other acts of a collateral or dissimilar character." Roghberg v. Manhattan Coil Co., 84 Ga.App. 528, 535 (1951).

Apparent authority refers to an agent's authority as it is apparent to third parties. Gosule v. Bestco, Inc., 227 Ga. App. 863, 864 (1997). "The authority of an agent in a particular instance need not be proved by an express contract; it may be established by the principal's conduct and course of dealing, and if one holds out another as his agent, and by his course of dealing indicates that the agent has certain authority, and thus induces another to deal with his agent as such, he is estopped to deny that the agent has any authority which, as reasonably deducible from the conduct of the parties, the agent apparently has." 20/20 Vision Center, Inc. v. Hudgens, 256 Ga. 129, 134 (1986) (quotation and citations omitted); Ampex Credit Corp. v. Bateman, 554 F.2d 750, 753 (5th Cir. 1977) ("In Georgia a principal may confer authority on an agent merely by a course of conduct holding out that person as an agent which induces others to rely on the statements of that

agent.").  "Where there were no manifestations of authority by the principal to a third party, apparent authority is not in issue."  Gosule, 227 Ga. App. 864.

"As a general rule, the question of authority to do an act, when it is to be determined from disputed facts or undisputed facts from which conflicting inference may be drawn, *must be decided by the jury as a question of facts* or as a question of mixed fact and law."  Atlanta Limousine Airport Serv., Inc. v. Rinker, 160 Ga. App. 494, 495 (1981) (emphasis added) (citing Schaeffer v. King, 121 Ga. App. 171 (1967)).  A dispute of fact exists regarding Croson's apparent authority.

Hosanna argues that Croson had no apparent authority.  It alleges that only Taylor had authority to enter into contract.  It contends that Taylor never held Croson out as having the authority to bind Hosanna.  Hosanna therefore argues that any contract entered into by Croson is unenforceable.

Plaintiffs, on the other hand, submit evidence showing Croson's apparent authority.  Plaintiffs allege that they initially discussed the terms of the Employment Contracts with Taylor and Croson.  (3rd Zuri Aff., ¶ 7; 2nd Jeric Aff., ¶ 7).  They allege that Croson, acting as Hosanna's designated agent, then sent Plaintiffs the Employment Contracts.  (3rd Zuri Aff., ¶ 8, Ex. 1).  They allege that Hosanna permitted Croson to manifest assent to the contracts on behalf of the Company.  (3rd Zuri Aff., ¶ 10, Exs. 2 & 3; 2nd Jeric Aff. ¶ 9).  They further allege

that Taylor ratified Croson's agreement to the terms of the Employment Contracts with her words and actions. (3rd Zuri Aff., ¶12; 2nd Jeric Aff. ¶ 10; Croson Decl., Ex. 3). In sum, Plaintiffs allege facts sufficient to lead a reasonable person to conclude that Hosanna held Croson out as its agent and that Croson, on behalf of Hosanna, negotiated and agreed to the terms of an employment contract with the Plaintiffs. Summary judgment is inappropriate where such disputes of fact exist. Atlanta Limousine, 160 Ga. App. at 495.[6]

Even if there was no dispute of fact regarding Croson's authority, a triable issue of fact exists regarding whether Taylor negotiated and agreed to the employment contracts herself. Plaintiffs have offered evidence that Taylor was involved in all phases of the Employment Contracts' formation and in doing so conceded to the contract terms that Plaintiffs contend were negotiated. (See 3rd Zuri Aff., ¶¶ 7, 10-12; Croson Decl., Ex. 3). These issues will be decided at trial.

### D. Hosanna Is Not Entitled To Summary Judgment Based On Lack of Consideration

Hosanna did not raise in its Motion for Summary Judgment the argument that the Employment Contracts fail for a lack of consideration and for this reason

---

[6] While not addressed by the parties, Plaintiffs have also offered evidence which creates a dispute of fact regarding Croson's implied authority. They allege that Croson routinely negotiated agreement on behalf of Hosanna, including terms of employment. (Pope Aff., ¶ 3).

the Court is not required to evaluate whether this element of contract formation is met in this dispute. The Court notes that Hosanna, in its Sur-Reply to Plaintiffs' Motion to Compel Arbitration,[7] argues that the Employment Contracts are unenforceable because they lack sufficient consideration. It contends, "[a]s Hosanna already had an oral agreement for the Murphys to perform certain duties at a determined compensation rate, there was no consideration for the enhanced benefits (including arbitration) described in the agreements." (Def.'s Sur-Reply Brief Addressing Issues Identified By the Court ("Def.'s Sur-Reply"), pp. 9-10.)

"Any benefit accruing to the promisor, or any loss, trouble, or disadvantage undergone by the promise, is a sufficient consideration, in the eyes of the law, to sustain a cause of action of action upon the breach of an agreement." <u>Vanguard Prop. Dev. Corp. v. Murphy</u>, 136 Ga.App. 519, 521 (1975). Even if Hosanna had properly raised its lack of consideration argument, the argument is not persuasive.

The Employment Contracts provide new benefits to Hosanna, the promisor. For instance, they required Plaintiffs to exercise their best efforts in performing their duties. (Affidavit of Zuri Croson Murphy ("Zuri Aff."), Ex. 1, § 1; Affidavit of Jeric Murphy ("Jeric Aff."), Ex. 1, § 1.) The Employment Contracts also

_____

[7] This briefing was filed nearly concurrently with the briefing on the Motion for Summary Judgment. The Motion to Compel Arbitration also concerned the enforceability of the Employment Contracts. Plaintiffs have had the opportunity to respond to all arguments asserted by Hosanna in that motion.

disadvantaged Plaintiffs, the promise, such as requiring Plaintiffs to provide notice prior to their termination.  (Zuri Aff., Ex. 1, § 8(c); Jeric Aff., Ex. 1, § 8(c).)  The Employment Contracts further required that Plaintiffs attend arbitration in the event of a dispute.  (Zuri Aff., Ex. 1, § 9; Jeric Aff., Ex. 1, § 9.)  Since the Employment Contracts appear to provide benefits to Hosanna and disadvantaged Plaintiffs, summary judgment based on lack of consideration not appropriate.

> **E.    A Triable Issue Of Fact Exists Whether Hosanna Agreed To the Employment Contracts**

A binding contract requires agreement to all material terms.  O.C.G.A. §§ 13-3-1, 13-3-2; Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1582 (11th Cir. 1994).  "It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense."  Cox Broadcasting Corp. v. Nat Collegiate Athletic Ass'n, 250 Ga. 391, 395 (1982).   "[T]he circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement.  *Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury*."  Legg v. Stovall Tire & Marine, 245 Ga. App. 594, 596 (2000) (emphasis added); Danfair Properties v.

Bowen, 222 Ga. App. 425, 426 (1996).  The parties dispute the facts regarding the negotiation of the agreement at issue in this case.

It is a disputed question of fact whether there had been a meeting of the minds on the essential terms of an employment agreement.  Hosanna contends that Croson sent Plaintiff  a sample agreement that he found on the internet.  (Croson Decl., ¶ 8).  Plaintiffs, on the other hand, contend that this was the memorialization of a verbal agreement reached with Hosanna.  (3rd Zuri Aff., ¶ 8, Ex. 1; 2nd Jeric Aff., ¶ 7).

There are disputes of fact surrounding Hosanna's contention that Zuri repeatedly modified the agreement.  Hosanna points to Zuri's July 3rd email to Croson, which states, "[h]ere are our signed and notarized contracts…. Please call us so we can discuss the changes." (Croson Decl., Ex. 2).  Hosanna contends that this demonstrates Plaintiffs were still making changes to the Employment Contracts in July.  Plaintiffs, on the other hand, assert that the agreement was finalized in March 2008.  (3rd Zuri Aff., ¶¶ 7-10; 2nd Jeric Aff., ¶¶ 7-9).  Plaintiffs assert that no material modifications were ever made.  (3rd Zuri Aff., ¶ 10).  They contend the "changes" referenced in the July 3rd email related to different issues. (4th Zuri Aff., ¶ 3).

There are disputes of fact surrounding Hosanna's failure to sign the contracts. Hosanna claims it refused to sign because the terms of the agreement were unacceptable. Plaintiffs note that "assent to the terms of a contract may be given other than by signatures." Cochran v. Eason, 227 Ga. 316, 318 (1971); Legg, 245 Ga. App. at 596. They contend that Hosanna's failure to sign is immaterial and that Hosanna indicated its agreement with the Employment Contracts and their terms on multiple occasions, in a variety of ways. For instance, Plaintiffs allege that Croson presented the March 12 Employment Contract to Plaintiffs following Hosanna's acceptance of those terms at a hotel meeting. (3rd Zuri Aff., ¶¶ 8-10). Plaintiffs allege that Croson, in phone calls with Zuri and Jeric, confirmed that the terms of the Employment Contracts were acceptable. (3rd Zuri Aff., ¶ 10; 2nd Jeric Aff. ¶ 9). Plaintiffs argue that Croson evidenced Hosanna's assent in his April 2008 email, where he stated, "[w]ill sign when we get there." (3rd Zuri Aff., Ex. 3). They contend that Taylor manifested her assent when she reviewed the contracts, stated "everything looked good," and said that she would sign the document shortly. (3rd Zuri Aff., ¶ 12). Plaintiffs also contend that Taylor's email to Croson in March 2009 indicates she previously agreed to the employment terms. (See, Croson Decl., Ex. 3). There is simply a dispute of what was and was not agreed to in this case.

There are numerous other disputes of fact related to whether an agreement was reached. The parties dispute why Plaintiffs did not receive the raise promised in the contracts. The parties dispute the meaning of Plaintiffs' March 2009 letter. The parties dispute whether Hosanna offered Jeric a contract.[8] The parties also dispute Taylor's involvement and awareness of the contract negotiations.

It is improper for the Court to weigh this evidence at summary judgment and make credibility determinations. See, e.g., Fletcher v. Amax, Inc., 160 Ga. App. 692, 695 (1981) ("The cardinal rule of the summary procedure is that the court can neither resolve the facts nor reconcile the issues but only look to ascertain that there is an issue,"). Disputes of fact regarding whether an agreement has been accepted are questions entrusted to a jury. Legg, 245 Ga. App. at 596; see also Kimbrell v. Connor, 218 Ga. App. 812, 813 (1995) (dismissal inappropriate where plaintiff disputed virtually all of defendant's allegations about negotiation and preparation of the agreement at issue). A jury is required to sort the facts out here.

---

[8] Even if Hosanna had not made an offer to Jeric when Croson allegedly instructed Zuri to prepare a written contract for Jeric conforming to the parties agreement at the March 2008 hotel meeting (see 3rd Zuri Aff., ¶ 9), Plaintiffs have alleged facts sufficient to show that they made an offer to Hosanna which was accepted. Plaintiffs allege that it sent copies of the written contracts to Taylor and Croson. (3rd Zuri. Aff., Ex. 2). They allege that Croson and Taylor reviewed Jeric's agreement and accepted its terms. (2nd Jeric Aff., ¶¶ 9-10).

1. **The Parties' Failure To Execute A Non-competition Agreement Did Not Render the Employment Contracts Void**

Hosanna argues in its Sur-Reply to Plaintiffs' Motion to Compel Arbitration that there could be no acceptance because the parties never executed the "Non-competition Agreement" identified in Section 7 of the Employment Contracts.[9] Hosanna contends that since this is a material term, and there is no severability provision, there was not an agreement on all material contract terms and the Employment Contracts are thus unenforceable.

Plaintiffs concede that the parties did not agree to the terms of any restrictive covenants. They argue, however, that this is a non-essential term. The failure to execute non-competition provisions does not, Plaintiffs claim, render the Employment Contracts unenforceable.

a) **The Employment Contracts Were Severable**

O.C.G.A. § 13-1-8 provides, "(a) [a] contract may be either entire or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder. (b) The character of the contract in such case is determined by the intention of the parties." The Court's primary task "in determining contract severability remains

---

[9] As discussed above, since Hosanna did not raise this argument in its Motion for Summary Judgment, the Court is not required to evaluate it.

that of ascertaining the intent of the parties." <u>Nat'l Consultants v. Burt</u>, 186 Ga. App. 27, 34 (1988). "The parties' intent may be expressed directly, through a severability clause, or indirectly, as when the contract contains promises to do several things based upon multiple considerations." <u>Grove v. Sugar Hill Investment Assoc.</u>, 219 Ga. App. 781, 786 (1995).

Here, the Employment Contracts did not contain severability provisions. The absence of a severability clause does not, alone, mean the Employment Contracts are unseverable. <u>ISS International Serv. Systems, Inc. v. Widmer</u>, 264 Ga. App. 55, 61 (2003). The Employment Contracts contained multiple promises for Plaintiffs to do, or refrain from doing, various things. For example, Plaintiffs agreed to work for Hosanna and exercise their best efforts in exchange for a set salary. (Zuri Aff., Ex. 1, §§ 1, 3; Jeric Aff., Ex. 1, §§ 1, 3.) In a separate provision, Plaintiffs agreed to arbitrate any claim arising from the contract. (Zuri Aff., Ex. 1, § 9; Jeric Aff., Ex. 1, § 9.) Plaintiffs also agreed to provide notice prior to terminating their employment. (Zuri Aff., Ex. 1, § 8(c); Jeric Aff., Ex. 1, § 8(c).) Hosanna made other promises. It agreed to provide Plaintiffs with a raise following 90 days of employment. (Zuri Aff., Ex. 1, § 3; Jeric Aff., Ex. 1, § 3.) It agreed to pay Plaintiffs more than a year's salary unless Plaintiffs were terminated for cause. (Zuri Aff., Ex. 1, § 8(a); Jeric Aff., Ex. 1, § 8(a).) Hosanna  agreed to

arbitrate any dispute arising from the Employment Agreements.  (Zuri Aff., Ex. 1, § 9; Jeric Aff., Ex. 1, § 9).  Here, the parties' "promises to do certain things did not eliminate or affect [the parties'] obligation to do other things as well."  See Vegesina v. Allied Informatics, Inc., 257 Ga. App. 693, 695 (2002).  In such instances, the multiple considerations and promises evidence that the parties intended the contracts' provisions to be severable.  Id.

> **b)**  **Section 7 Of The Employment Contracts May Be Deemed A Non-Essential Provision**

The parties' failure to reach a meeting of the minds on the Section 7 Non-competition Agreement, does not cause the other provisions of the agreement to be unenforceable.  Toncee v. Thomas, 219 Ga. App. 539 (1995), is instructive on this issue.  In Toncee, a former employee of Toncee, Inc. ("Toncee"), Thomas, brought an action for breach of employment contract against Toncee.  Id. at 539.  Before he began working, Toncee's attorneys presented Thomas with a document entitled "Outline of Terms of Employment Agreement and Stock Option [the "Letter of Intent"]."  Id.  The Letter of Intent broadly set forth the terms of Thomas' employment, including his salary, responsibilities, a stock option provision, and various company polices.  Id. at 539.   It further noted, "If the terms of this letter of intent are acceptable to you, we will instruct our attorneys to prepare a formal employment agreement and stock option agreement which will

include these terms….” Id. at 540. After Thomas received the Letter of Intent, he began his employment. Id. Toncee did not draft a formal employment agreement, and it did not prepare a stock option agreement. Id. Two years later, Thomas' employment was terminated. Id. at 540-41. Thomas sued, alleging breach of the Letter of Intent. Id.

Toncee argued in a motion for directed verdict that the Letter of Intent was not an enforceable contract because essential portions of the contract, namely the stock option agreement, were not negotiated. Id. at 540-41. The Court of Appeal upheld the trial court's finding that failure to negotiate the stock option agreement was not fatal to the contract. Id. at 541. The Court found that since the stock option agreement was to be separately drafted, it was severable from the employment contract itself. Id. The remainder was held to be enforceable. Id. The Court observed,

> [I]n cases involving the issue of severability, where an instrument in writing, purporting to be a bilateral contract, contains mutual promises, which without more and when taken independently of certain subsidiary provisions in the instrument would render the instrument valid as a contract, such subsidiary provisions will not, unless their terms imperatively demand it, be given a construction that will nullify and completely destroy the entire obligations of either party under the instrument and thus render the instrument lacking in mutuality and void.

Id. (internal punctuation omitted) (citing National Consultants, 186 Ga.App. at 34).

In this case, like in <u>Toncee</u>, the Employment Contracts called for the parties

to execute a separate Non-competition Agreement. Like in <u>Toncee</u>, the failure to

execute a separate Non-competition Agreement did not mean the parties did not

intend to enter into and be bound by the Employment Contracts. Hosanna still

enjoyed the benefits of Plaintiffs' work. Plaintiffs still received compensation

consistent with the terms of the Employment Contracts (and the alleged subsequent

deferral agreement).[10] Hosanna is not entitled to summary judgment based on the

parties' failure to agree to a Non-competition Agreement.

Hosanna's Motion for Summary Judgment is denied.

## III. PLAINTIFFS' MOTION TO COMPEL ARBITRATION

### F. Standard of Review

The Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"),[11] is based on the strong

federal policy supporting arbitration agreements. In enacting the FAA, Congress

was seeking "to reverse the longstanding judicial hostility to arbitration agreements

---

[10] Other courts have held that an employment contract still remains enforceable despite the invalidity of a subsidiary non-competition provision. <u>See</u>, <u>e.g.</u>, <u>Horne v. Drachman</u>, 247 Ga. 802, 805-06 (1981).

[11] The FAA has been held to apply to employment contracts, except those involving transportation workers. <u>See</u> <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1367 (11th Cir. 2005) (citing <u>Circuit City v. Adams</u>, 532 U.S. 105, 119 (2001). Hosanna does not appear to challenge the applicability of the FAA, despite being given the opportunity to brief this issue in a sur-reply. (<u>See</u> Def.'s Sur-Reply, pp. 2-3.) The Court finds that Plaintiffs have sufficiently shown that the Employment Contracts involved interstate commerce.

. . . and to place [these] agreements on the same footing as other contracts."  EEOC

v. Waffle House, Inc., 534 U.S. 279, 289 (2002).  The Supreme Court and this

Circuit consistently have expressed a strong policy in favor of arbitration.  Ivax

Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002); Brandon,

Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc., 312 F.3d

1349, 1357 (11th Cir. 2002) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-

Plymouth, Inc., 473 U.S. 614, 625 (1985)).

The FAA also provides that "[a] party aggrieved by the alleged failure,

neglect, or refusal of another to arbitrate under a written agreement for arbitration

may petition any United States district court . . . for an order directing that such

arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

To determine whether arbitration should be compelled, "the Court must

assess whether: (1) there is a valid written agreement to arbitrate; (2) the issue

[sought to be arbitrated] is arbitrable under the agreement; and (3) the party

asserting the claims has failed or refused to arbitrate the claims."  Lomax v.

Woodmen of the World Life Insurance Society, 228 F. Supp. 2d 1360, 1362 (N.D.

Ga. 2002) (internal quotations and citations omitted).

Here the Court has concluded that there are issues of fact regarding whether the parties entered into valid binding contracts, including valid binding arbitration agreements. The Court necessarily concludes that it cannot enforce the arbitration provisions until a jury has determined that binding agreements, including agreement to arbitrate, were reached between the parties.

## II.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Hosanna's Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Arbitration is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will order an in Chambers status conference for this case on Tuesday, January 19, 2010, at 2:00 p.m.[12]

---

[12]    The Court notes that its opinion places the matter in an unusual and inefficient posture. The trial required will likely be limited to the issues of whether the parties entered into enforceable Employment Contracts. If they did, it appears the jury would then have to be discharged and the matter sent to arbitration. The Court believes it would be helpful to have a status conference to discuss how to proceed in this matter.

**SO ORDERED** this 8th day of January, 2010.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE